STATE OF NEBRASKA, APPELLEE, V.
WILLIAM D. KINSER, JR., APPELLANT.
609 N.W.2d 322

Filed April 14, 2000. No. S-99-738.

James R. Mowbray and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Donald J.B. Miller for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

William D. Kinser, Jr., was convicted of second degree assault in the district court for Box Butte County. Kinser was sentenced as a habitual criminal to a period of not less than 10 nor more than 20 years' imprisonment. He timely appeals his conviction and sentence.

## SCOPE OF REVIEW

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

■ The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

## FACTS

On the evening of January 20, 1995, James W. Covalt was at the Bowl Mor Lounge in Alliance, Nebraska. Covalt testified that he was seated on a barstool when Kinser approached and began to bother him. Covalt stated that while his back was to Kinser, he heard the sound of glass breaking as he was knocked to the floor.

Kinser had struck Covalt in the face with a tall glass. Covalt was transported to the emergency room of a local hospital, where he received medical attention for lacerations on the side of his nose.

Prior to trial, the State filed a motion in limine to prohibit Kinser from introducing evidence from Kenneth Connor relating to Covalt's mental health. Subsequently, during cross-examination of Covalt, Kinser attempted to elicit testimony regarding Covalt's mental health. The State's objection was sustained. Later, Kinser made an offer of proof which established that Covalt had been diagnosed as suffering from paranoid schizophrenia and that Haldol had been prescribed to him for a period of 5 months. Kinser alleged that if Covalt was allowed to testify, he would have stated that he had experienced auditory hallucinations, but that he could not recall what these voices had told him.

Kinser also made an offer of proof which alleged that Connor would have testified that he is a certified counselor who treated Covalt in 1997 and that he had consulted with Covalt's clinical psychologist and treating psychiatrist. Kinser alleged that if permitted, Connor would have testified that Covalt reported hearing

auditory hallucinations telling him to commit violent acts and that he felt compelled to obey these voices. In response, the State submitted an offer of proof that Connor was an alcohol counselor and therefore was not qualified to render a diagnosis in regard to a major illness.

Kinser did not testify at trial. Penny K. Overshiner, who accompanied Kinser to the lounge on January 20, 1995, testified that she was standing at the bar when she observed the altercation. She said that Covalt, who was holding a beer bottle, raised his arm toward Kinser. At that time, she thought Covalt was going to hit Kinser. She further stated that in response, Kinser punched Covalt in a defensive manner with his right hand, in which he was holding a tall glass.

The jury acquitted Kinser of first degree assault and use of a deadly weapon to commit a felony but found him guilty of second degree assault. On May 27, 1999, the trial court found that Kinser was a habitual criminal and sentenced him to a period of not less than 10 nor more than 20 years' imprisonment. Kinser timely appealed.

## ASSIGNMENTS OF ERROR

Kinser asserts, summarized and restated, that the trial court erred (1) in prohibiting cross-examination of Covalt regarding whether he suffered from auditory hallucinations in which voices commanded him to commit acts of violence and whether he felt compelled to obey such voices, (2) in prohibiting Connor from testifying on behalf of Kinser, (3) in denying his motion to strike Covalt's testimony, and (4) in sustaining the State's objection to Overshiner's impression of Covalt's demeanor at the time of the altercation.

## ANALYSIS

Kinser argues that the trial court erred in sustaining the State's objection to Kinser's cross-examination of Covalt regarding auditory hallucinations. Kinser alleges that he was denied his Sixth Amendment right to confront the witnesses against him.

In Covalt's deposition, which Kinser included as an offer of proof, Covalt stated that he had told physicians that he began

hearing auditory hallucinations in December 1996 or January 1997. However, he denied that he was ever commanded to commit acts of violence. At trial, when defense counsel attempted to ask Covalt about his mental health, the State's objections were sustained. Kinser then moved to strike Covalt's testimony, which motion was overruled. The trial court found that Covalt's mental condition did not occur until 1996 or 1997, well after the assault. Kinser then made the offer of proof regarding Connor.

Kinser argues that in order to establish self-defense, he needed to cross-examine Covalt regarding these auditory hallucinations to show Covalt's dangerous and turbulent character. Kinser claims that such evidence was relevant as to who was the first aggressor. A determination of whether the victim was the first aggressor is an essential element of a self-defense claim. See *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983).

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1995). All relevant evidence normally is admissible, and conversely, evidence which is not relevant is not admissible. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

Here, the record does not establish that Covalt suffered from auditory hallucinations at any time prior to December 1996. Allowing Kinser to cross-examine Covalt or examine his medical records with respect to hallucinations occurring almost 2 years after the assault would not be relevant to Kinser's claim of self-defense. Under such circumstances, we cannot say that the trial court abused its discretion in sustaining the State's objection to Kinser's cross-examination of Covalt regarding the auditory hallucinations. A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Myers*,

258 Neb. 272, 603 N.W.2d 390 (1999). Neither was Kinser denied cross-examination in violation of the Sixth Amendment. He was denied cross-examination of Covalt as to this issue because it was not relevant to the altercation which occurred on January 20, 1995.

Kinser next argues the trial court erred in prohibiting the testimony of Connor, which Kinser alleges deprived him of his constitutional right to compel attendance of witnesses on his own behalf as guaranteed under the Sixth Amendment to the U.S. Constitution. In support, Kinser relies upon *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989).

In *Trammell*, the defendant sought to obtain medical records concerning the victim to be used for impeachment purposes. We held that medical records of matters which occurred 12 to 13 years before the offense were too remote to have any relevance and that there was no error in refusing to permit the defendant to explore those matters. However, we held that the victim was improperly allowed to testify without permitting the defendant to discover and produce evidence concerning the current treatment of the victim's medical condition.

In *Trammell*, the defendant requested a hearing "in order to show the court the need for the defense to 'make inquiry of [the victim's] mental abilities and capacities in order to explain . . . sharp conflicts in the facts in this case.'" 231 Neb. at 140, 435 N.W.2d at 200. We stated that, generally, a trial court has some discretion in the matter of discovery where the material is sought for impeachment purposes.

> "If, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be

obliged to strike the testimony of the witness. . . . If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." *Id.* at 142-43, 435 N.W.2d at 201. Here, Kinser did not establish that the medical information sought was relevant. Whether Covalt suffered from hallucinations nearly 2 years after the altercation was not relevant. Kinser did not establish that the failure to produce the information would be likely to impair his right of confrontation.

If Kinser wanted to review Covalt's medical records, he should have requested a hearing to show that his right of confrontation was likely to be impaired if he did not have access to the information. If he met this burden, and Covalt consented, the trial court could have conducted an in-camera inspection of the medical records to determine relevancy. If Covalt refused to consent to the in-camera inspection, the trial court may have been obliged to strike his direct testimony. Kinser's assignment of error on this issue has no merit.

Similarly, Connor's testimony was not relevant. Thus, we cannot say that the trial court abused its discretion in sustaining the State's motion to exclude Connor's testimony regarding Covalt's mental health.

Kinser argues that the trial court erred in not striking Covalt's testimony. At trial, the State objected to Kinser's questioning of Covalt regarding his mental health. When the State's objection was sustained, Kinser moved to strike Covalt's trial testimony based upon our rationale in *State v. Trammell,* 231 Neb. 137, 435 N.W.2d 197 (1989). This motion was overruled. The trial court was not required to strike Covalt's testimony, since the evidence Kinser sought to introduce was not relevant. Kinser did not establish that he was denied access to relevant material regarding Covalt's mental health.

We next address whether the trial court erred in sustaining the State's objection to Overshiner's impression of Covalt's demeanor at the time of the assault. Overshiner was asked by defense counsel: "[W]hat was your impression of the manner in which James Covalt raised that . . . that bottle?" The State's

objection to relevance was sustained. Defense counsel then asked: "At the time you saw James Covalt raise that bottle, what did you believe that James Covalt was doing?" Again, the State's objection to relevance was sustained. Defense counsel further inquired: "How did James Covalt appear in his demeanor to you, at the moment he raised that bottle?" The State's objection to relevance was again sustained. Kinser then made the following offer of proof: "My offer of proof is if the witness were permitted to testify, she'd testify that James Covalt made an upper swinging motion in a provocative manner, and he appeared to her to be aggressive and angry."

We conclude that the trial court erred in sustaining the State's objection to this testimony. Clearly, Overshiner's observation of the incident and her impression of what Covalt was going to do when he raised the beer bottle were relevant to Kinser's claim of self-defense. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. § 27-401. Kinser was attempting to elicit testimony from Overshiner that she thought Covalt was the aggressor and was attempting to hit Kinser before Kinser struck Covalt.

 In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999). Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999).

Later, Overshiner was asked what she saw after Covalt raised his beer bottle. She testified that "[Kinser's] arm come [sic] up, like, defensive-like." She stated that at first she thought Covalt was going to hit Kinser. Based on this testimony, we conclude that the exclusion of Overshiner's previous testimony was harmless beyond a reasonable doubt. Although the trial court erroneously sustained the State's objection to the earlier testimony, Overshiner was subsequently asked what Covalt was doing, and she gave similar testimony which equates with Kinser's offer of

proof that Covalt made an upward swinging motion in a provocative manner and appeared to be aggressive and angry. Therefore, Overshiner's testimony regarding what she thought was going to happen was subsequently admitted, and any error by the trial court was harmless beyond a reasonable doubt.

## CONCLUSION

For the reasons stated herein, we affirm the judgment and sentence imposed by the trial court.

AFFIRMED.